IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRETT JAY CLARK,

                 Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

13-cv-392-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Brett Jay Clark seeks judicial review of the denial of his claim for disability insurance benefits and supplemental security income.  He contends that the administrative law judge erred in concluding that he was not disabled and that the Appeals Council erred in failing to order a remand under sentence six of 42 U.S.C. § 405(g), in light of new evidence that plaintiff submitted to the agency.  I conclude that no error was made at either level.

The administrative law judge considered plaintiff's hearing loss and dizziness resulting from Meniere's disease but concluded that because the condition had not prevented plaintiff from working at a nearly full-time basis in the past, he was able to work full-time.  The Appeals Council was not required to consider the letter and report that plaintiff submitted after the administrative law judge had issued his decision. In the documents, plaintiff's treating doctor wrote that plaintiff would miss many days of work each month because of

his condition.  This opinion was based on plaintiff's self-reports of his condition and refuted by plaintiff's  work history, which showed that he had been working close to full-time and had only once been forced by his condition to leave work mid shift.  Neither document would have required the council to ask the administrative law judge to reconsider his ruling because it is not probable that the administrative law judge would have reached a different result on demand.  Accordingly, it was not a legal error for the Appeals Council to deny review.

RECORD FACTS

A. <u>Medical Evidence</u>

Plaintiff Brett Jay Clark was born in March 1962.  In May 2010, when he was living in Wisconsin, he went to Nevada to undergo alcohol treatment, which he completed successfully.  He worked for seven months at a 7-Eleven convenience store in Las Vegas and he had audiological testing at the Werner Institute there for his Meniere's disease.  He also enrolled in physical therapy for balance retraining.  AR 351.  The Institute notes show that his chief complaint was noted as "persistent and debilitating vertigo/dizziness that restricts IADL."  AR 307.  ("IADL" is not defined; it may refer to activities of daily living.)  The "clinical impression" was "complex gait and balance disorder secondary to poorly compensated right-sided PNS vestibular hypofunction with moderate to considerable disuse/deconditioning in the bilateral lower extremities."  <u>Id</u>.  ("The vestibular system includes the parts of the inner ear and brain that control balance and eye movements."

https://vestibular.org/understanding-vestibular-disorder/symptoms, visited June 5, 2014).
Test findings showed that plaintiff had a considerable overall fall risk and restricted cervical
range of motion, among other things.  Id.

On April 29, 2011, plaintiff had a consultative examination by Dr. Simon Farrow in
Las Vegas at the request of the Social Security Administration, Bureau of Disability
Adjudication.  AR 318-23.  Plaintiff told Farrow he had Meniere's disease and that it caused
him to suffer attacks of severe dizziness that came on as often as once or twice a week
without warning and generally made him lose his balance.  AR 320.  Each attack lasted about
three hours.  He also reported being in a constant state of dizziness, feeling unsteady and
unable to balance properly.  Farrow observed that plaintiff's condition "would not be
expected to produce persistent, severe nonspecific failure of compensation by the central
vestibular system to provocative stimuli as reported by the claimant." AR 321.  He found
no reason why plaintiff would not be able to work "at least in a sedentary job." Id.  He
noted that plaintiff's hearing was limited in one ear, that he should avoid heights  and
moving machinery and should not climb ladders, but he could walk, stand or sit six hours
out of an eight-hour workday and stoop, bend, kneeling, balance, squat and crawl.  AR 318.

After returning to western Wisconsin in May 2011, plaintiff saw an otolaryngologist,
Dr. Peter Alt, in Dubuque, Iowa, to discuss surgery for his hearing problems and dizziness.
AR 404-05.  In the end, he decided not to have the surgery but to have an injection of
Gentamicin instead.  He found the injection helpful enough to have a second one in July.
AR 400-01.  He returned again in August 2011 and told Dr. Alt he was interested in a

disability claim.  AR 396. The doctor wrote that plaintiff "is now more interested in his disability status than specific treatment for his ear.  Consequently, at this point, I think a second opinion from the University [of Wisconsin] would be appropriate."  Id.  He added that he would be happy to treat plaintiff if the second opinion agreed with the transtympanic Gentamicin procedure or an endolymphatic shunt as an appropriate treatment.  AR 397.

Plaintiff had an initial intake evaluation by Dr. Mark Pyle at the University of Wisconsin Otology Neurology Clinic on October 10, 2011.  AR 370.  (According to Dr. Alt's office notes, plaintiff had been offered an earlier appointment but declined it in order to help his wife with a garage sale.  AR 392.)  Notes from the university hospital show that plaintiff called on November 4, 2011 to say he had a job at a call center and needed documentation "on his barriers working with Meniere's."  AR 376.  According to another note, plaintiff called on November 15, 2011 to ask the hospital to fax a Return to Work letter to his employer.  AR 377.

Dr. Pyle noted at the intake evaluation that plaintiff had a long-standing history of unilateral left-sided syndrome that had caused him to have two "drop attacks" ("sudden and spontaneous falls while standing or walking, with complete recovery in seconds or minutes," http://www.dizziness-and-balance.com/disorders/central/drop.html, visited June 4, 2014) during the preceding year and one in March 2011 that had required calling an ambulance. AR 370. In Pyle's opinion, plaintiff was unable to work because of his vestibular syndromes. Id. He suspected that plaintiff had some sort of central disorder that prevented him from compensating for his unilateral peripheral loss on his left side, which would explain "his

4

almost constant imbalance." Id.  The next day, Dr. Pyle wrote a letter "To Whom It May Concern," on plaintiff's behalf, in which he referred to plaintiff's Meniere's syndrome, his two "drop attacks" and the one incident requiring an ambulance.  AR 380.  He added that plaintiff was unable to work at the time.

Plaintiff saw Dr. Pyle again on January 13, 2012, reporting a constant feeling of imbalance at all times, together with a weight gain of 50 pounds and ongoing episodic vertigo.  AR 378.  He reported having fallen to his side and experienced hours of spinning, nausea and vomiting afterwards.  Id.

According to Social Security records, plaintiff worked in the third and fourth quarters of 2010 and in the first quarter of 2011 and had total earnings for the period of $9,345.00.  AR 162.  In the fourth quarter of 2009 and the first two quarters of 2010, he received unemployment benefits totaling $17,755,00.  AR 162-63.  In a Work Activity Report, a social security administration interviewer reported on February 17, 2011 that plaintiff had filed for benefits in January (he does not give the year; presumably it is 2011), but was making $1200 a month at the time and was denied benefits.  The interviewer added that plaintiff "has since had his hours cut to comply w/ SSA's rules and is in neighborhood of 7-800.00/month."  AR 176.

## B. Administrative Hearing

At his administrative hearing on April 3, 2012, plaintiff testified that he had some college education, that he was working 30 hours a week, from 8:00 a.m. until 4:00 p.m., as

a telemarketer, AR 28, and that he had been at the job for five months.  AR 29.  He said he had either gone home or missed approximately ten days because of dizziness since starting the job, AR 30, and that he had had some trouble hearing the calls at first but had continued at the job.  AR 31.  Before his present job, he had worked 20 hours a week for seven or eight months at the Las Vegas 7-Eleven until he was forced to quit because of his Meniere's disease.  AR 32.  His duties had included running the cash register, stocking the cooler and cleaning.  Id.  On one occasion, he had had a major dizzy spell when he was the only person in the store and had had to hit the silent alarm to call the police department to come watch the store while he found a replacement worker.  Id.

Plaintiff told the administrative law judge that he had spent about 20 years in the printing industry as a head press operator, supervising other employees and doing press work himself.  AR 33.  He estimated that it had been ten years since he had learned he had Meniere's disease and that his condition had gradually worsened.  AR 34.  He had loss of balance, ringing in his ears, a constant state of dizziness and lightheadedness and major dizzy spells about three to four times a week.  Id.  He adapted to the dizziness through the physical therapy he'd had, but he found it difficult to work with the flashing lights on the computer screen and the need to move his head from screen to screen.  AR 35.  He testified that he was taking clonazepam to help control the dizzy spells.  AR 37.  Moving his head quickly causes dizziness, AR 40, but he was not experiencing any problems when he was driving, AR 41, and he did not have any problems with sleeping.  AR 42.

In response to a hypothetical question from the administrative law judge, a vocational

6

expert, Stacia Star, testified that a person who could lift 50 pounds occasionally, 25 pounds frequently, sit for six out of eight hours, stand for six out of eight hours, with no ability to climb ladders and a need to avoid hazardous heights and dangerous machinery could still perform the work of a retail cashier or clerk or a telemarketer.  The same person could perform other jobs that exist in significant numbers in the Wisconsin economy:  laundry worker, inventory clerk, retail stocker, automobile washer, janitor or general laborer.  AR 49-51.  If the person were restricted from repetitive stooping, balancing, crouching, squatting or crawling, he could perform all of the same jobs with exception of the last three. AR 51. If he were limited to light work, he could perform jobs that did not require the ability to hear well, including retail clerk and cashier.  AR 52-53, 55.


C. <u>Administrative Law Judge's Decision</u>

In his decision, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since February 1, 2011, his alleged onset date.  AR 13.  He surmised from the record that plaintiff had limited his hours so as not to be disqualified from receiving disability benefits, but gave him the benefit of the doubt on that point.  <u>Id</u>.  He found that plaintiff had the severe impairments of Meniere's disease, hearing loss and obesity, but none of these amounted to an impairment that met or medially equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14.  He concluded that plaintiff had the residual functional capacity to perform medium work, so long as he did not have to climb ladders, could avoid hazardous heights and dangerous

machinery, was limited to only occasional stair climbing, balancing, stooping and crawling and needed to hear only normal conversation.  Id.

The administrative law judge found plaintiff not credible insofar as he maintained he was not functionally capable of doing medium work with limitations.  He listed the following reasons:

(1) plaintiff's current work was just slightly below the level of substantial gainful activity and the record did not support his claim that he could not work a few more hours each week;

(2) the record suggested that plaintiff had chosen to reduce his work activity to below the level of substantial gainful activity;

(3) plaintiff had asked for a letter from Dr. Pyle, releasing him to work, which did not seem consistent with his claim that he was totally disabled;

(4) his medical treatment had been essentially routine or conservative in nature or both, as shown by his March 2011 treatment notes saying that his symptoms were manageable and he retained his ability to work despite his attacks of dizziness, AR 344;

(5) he had a hearing loss in his left ear but had not pursued a hearing aid and alleged that he was unable to hear ordinary conversation;

(6) his claim that his condition had worsened in the summer of 2011 was undercut by his choice to forgo an earlier appointment with Dr. Pyle at the University of Wisconsin so he could help his wife with a garage sale, AR 392;

(7) although plaintiff said he had had to miss work because of his condition, he also testified at the hearing before the administrative law judge that he was able to finish a workday even when he had a major episode of dizziness;

(8) he did not have a record of recurrent visits to the emergency room as would be expected if he had the recurring episodes of severe dizziness he alleged;

(9) he had had only one episode of dizziness requiring him to leave work;

(10) the consulting physician (Farrow) reported that plaintiff's Meniere's disease would not be expected to produce the kind of symptoms plaintiff was reporting and should

not interfere with his ability to hold a full-time job;

(11) plaintiff had not alleged that his obesity prevented him from working additional hours;

(12) the record contained no opinions from treating or examining doctors indicating that plaintiff was disabled, that he had limitations greater than those the administrative law judge had found or that restrictions should be placed on him; and

(13) the state agency medical consultant and consulting examiner found that plaintiff could perform a limited range of medium work without needing significant breaks. AR 15-16.

## D. Post Hearing Documents

After the administrative law judge issued his decision, plaintiff submitted two documents from Dr. Pyle. The first was an April 16, 2012 letter Pyle wrote to the doctor plaintiff had been seeing in Dubuque (Christopher Stille), saying that plaintiff had reported having three episodes a week, lasting from two to three hours, and that he was unable to follow a computer screen. AR 445. The second was an assessment of plaintiff's condition that Pyle prepared on May 15, 2012, in which he estimated that plaintiff would have three attacks of vertigo a week on average, AR 448, would be off task at least 15% of his working time, AR 449, and would miss more than four days of work each month. AR 451. He added that plaintiff was unable to follow a computer screen. Pyle assessed plaintiff's ability to sit or stand continuously as two hours, after which he would need to lie down. In his opinion, in an eight-hour day, plaintiff could stand less than two hours and sit about two hours. AR 450.

OPINION

Plaintiff's first challenge is to the administrative law judge's decision, which he contends is flawed because it did not give adequate weight to the medical evidence.   A review of the record and the decision shows that this challenge is unsubstantiated.   The medical evidence favoring plaintiff was sparse and, as the administrative law judge noted, based primarily on the symptoms that plaintiff related to the doctors.   At least two of the doctors (Drs. Farrow and Alt) found plaintiff's complaints questionable and believed that his chief purpose was to obtain disability benefits.   Dr. Pyle's report did not change the administrative law judge's view of plaintiff's condition.   As he noted, Dr. Pyle had sent a Return to Work letter to plaintiff's employer on plaintiff's behalf in November 2011, an action he found inconsistent with plaintiff's allegations of totally disabling symptoms.   The administrative law judge gave thorough consideration to plaintiff's hearing loss and dizziness resulting from Meniere's disease, but in the face of evidence that the condition had not prevented plaintiff from working at a nearly full-time basis in the past, he concluded it would not prevent plaintiff from working full-time in the future.   That conclusion was supported by the extensive record evidence suggesting that plaintiff's reports of the seriousness of his disease were not credible.   I am persuaded that the administrative law judge had ample evidence to support his decision.

As to the Appeals Council's denial of plaintiff's request to review the administrative law judge's decision, plaintiff has shown no reason to question the denial.   (The April 2012 letter was actually part of the record before the administrative law judge, AR 22, exhibit list

10

no. HO 16F.)  Plaintiff has not shown why he could not have presented Dr. Pyle's assessment earlier.  He says that it was a problem of costs, but plaintiff seems to have obtained extensive medical care and he was represented by counsel, which casts doubt on that excuse.  Even if he did have a good reason for not presenting the letter earlier, however, it would not have changed the decision, given the cumulative nature of the information and the lack of materiality.

Dr. Pyle's assessment appears to have been based solely on plaintiff's own statements, rather than on objective evidence, and the doctor never explained why plaintiff could have been working almost full-time for as long as he did had his disease been as serious as plaintiff made it out to be.  There was no reasonable probability that the administrative law judge would have reached a different conclusion about plaintiff's disability had he had the benefit of Pyle's assessment before he made his decision.  The late-submitted documentation is not material.  Consequently, a remand of the case under sentence six of 42 U.S.C. § 405(g) is not required.  Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005) ("New evidence is material if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered.")


ORDER

IT IS ORDERED that plaintiff Brett Jay Clark's motion for summary judgment, dkt. #12, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security is AFFIRMED.  The clerk of court is directed to enter judgment for

defendant and close this case.

Entered this 4th day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge